UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ADRIAN FRANCIS WILLIAMS,

                    Petitioner,

v.                                    Case No. 3:14-cv-706-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.

_____

**ORDER**

### I. Status

Petitioner Adrian Francis Williams, an inmate of the Florida
penal system, initiated this action on June 18, 2014, by filing a
pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under
28 U.S.C. § 2254 with exhibits (P. Ex.) and a "2254 Argument Brief"
(Memorandum; Doc. 2). In the Petition, Williams challenges a 2012
state court (Duval County, Florida) judgment of conviction for
dealing in stolen property and false verification of ownership on
a pawnbroker transaction form. Respondents have submitted a
memorandum in opposition to the Petition. See Respondents' Response
to Petition for Habeas Corpus (Response; Doc. 12) with exhibits
(Resp. Ex.). On October 14, 2014, the Court entered an Order to
Show Cause and Notice to Petitioner (Doc. 7), admonishing Williams
regarding his obligations and giving Williams a time frame in which

to submit a reply. Williams submitted a brief in reply. See Response (Reply; Doc. 13). This case is ripe for review.

## II. Procedural History

On September 23, 2010, the State of Florida, in case number 2010-CF-10746, charged Williams with burglary of a dwelling (count one), dealing in stolen property (count two), and false verification of ownership on a pawnbroker transaction form (count three). See Resp. Ex. A at 1. The State of Florida issued a capias that same day, see id. at 4, and Williams was arrested on November 28, 2011, see id. at 7; PD-1 at 1. In May 2012, Williams proceeded to trial, see Resp. Exs. D, E, F, Transcripts of the Jury Trial (Tr.), at the conclusion of which, on May 8, 2012, a jury found him guilty of dealing in stolen property (count two) and false verification of ownership on a pawnbroker transaction form (count three), see Resp. Ex. A at 118, 119, Verdicts, and not guilty of burglary (count one), as charged in the Information, see id. at 116-17, Verdict. On December 13, 2012, the court sentenced Williams to terms of imprisonment of twelve years on count two and ten years on count three, to run concurrently with each other and consecutively to the sentences imposed in case numbers 2007-CF-14505 and 2007-CF-14726. See Resp. Ex. B at 218-24.

On direct appeal, Williams, with the benefit of counsel, filed an initial brief, arguing that: (1) Williams' due process rights under the Florida and United States Constitutions were violated

2

when the court denied him access to relevant and material evidence - the stolen ring - despite repeated motions to compel its production; production of the ring, still in the victim's possession, would have proven William's innocence, and (2) the circuit court failed to conduct a proper Melbourne[1] inquiry into the State's peremptory strike of prospective juror Beverly Randolph. The State filed an answer brief. See Resp. Ex. H. On January 22, 2014, the appellate court affirmed Williams' conviction per curiam, see Williams v. State, 130 So.3d 232 (Fla. 1st DCA 2014), and the mandate issued on February 7, 2014, see Resp. Ex. I. During the pendency of Williams' appeal, he filed several petitions for extraordinary relief. See PD-2.

On March 10, 2010, Williams filed a pro se petition for writ of habeas corpus. In the petition, he asserted that appellate counsel (John Burr Kelly, III) failed to raise the following issues on direct appeal: Williams' right to speedy trial (claim one); the court's denial of his motion to vacate and set aside judgment based on a violation of Florida Rule of Criminal Procedure 3.191 (claim two); and Williams' right to challenge the Information as a violation of Florida Rule of Criminal Procedure 3.140(g) (claim three). See Resp. Ex. M. The appellate court denied the petition on the merits on April 8, 2014. See Williams v. State, 135 So.3d 1133 (Fla. 1st DCA 2014); Resp. Ex. N.

---

[1] Melbourne v. State, 679 So.2d 759 (Fla. 1996).

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, No. 16-8668, 2017 WL 1346407 (June 12, 2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Williams'] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, 137 S. Ct. 1203 (2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011) (citation omitted); see also Johnson v. Williams, 568 U.S. 289, --, 133 S. Ct. 1088,

1096 (2013).[2] Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application"

---

[2] The presumption is rebuttable and "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Williams, 133 S. Ct. at 1096-97. However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances . . . ." Williams, 133 S. Ct. at 1096.

clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, No. 16-8733, 2017 WL 1386004 (U.S. June 26, 2017); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made"); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. Wilson, 834 F.3d at 1239; see also Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017).[4] However, in Wilson, the en banc Eleventh Circuit stated

---

[4] Although the United States Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it." Butts, 850 F.3d at 1205 n.2.

that the federal habeas court is not limited to assessing the reasoning of the lower court. 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," <u>Renico</u>,[5] 559 U.S. at 773, 130 S.Ct. 1855 (quoting <u>Visciotti</u>,[6] 537 U.S. at 24, 123 S.Ct. 357), and presume that it "follow[ed] the law," <u>Donald</u>,[7] 135 S.Ct. at 1376 (quoting <u>Visciotti</u>, 537 U.S. at 24, 123 S.Ct. 357).

<u>Id.</u> at 1238.

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). "If this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that Williams' claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[5] <u>Renico v. Lett</u>, 559 U.S. 766 (2010).

[6] <u>Woodford v. Visciotti</u>, 537 U.S. 19 (2002).

[7] <u>Woods v. Donald</u>, 135 U.S. 1372 (2015).

## VI. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S.

838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1
(1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[8] supra, at 747–748, 111 S.Ct. 2546; Sykes,[9] supra, at 84–85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the

---

[8] Coleman v. Thompson, 501 U.S. 722 (1991).

[9] Wainwright v. Sykes, 433 U.S. 72 (1977).

> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012). Thus, procedural

defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a

federal court may still consider the claim if a state habeas

petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. <u>Maples v.</u>

<u>Thomas</u>, 132 S.Ct. 912, 922 (2012) (citations omitted); <u>In re Davis</u>,

565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for

Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477
> U.S. at 488, 106 S.Ct. 2639). Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." <u>Id.</u>
> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
> S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a

petitioner may receive consideration on the merits of a

procedurally defaulted claim if he can establish that a fundamental

miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result. The Eleventh Circuit has

explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." <u>Carrier</u>, 477 U.S. at 496,
> 106 S.Ct. at 2649.[10] "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). "To meet this

standard, a petitioner must 'show that it is more likely than not

that no reasonable juror would have convicted him' of the

underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th

Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)).

Additionally, "'[t]o be credible,' a claim of actual innocence must

be based on reliable evidence not presented at trial." <u>Calderon v.

Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at

324). With the rarity of such evidence, in most cases, allegations

of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513

U.S. at 324.

---

[10] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

## VII. Ineffective Assistance of Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). This two-part Strickland standard also governs a claim of ineffective assistance of appellate counsel. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016).

The Eleventh Circuit has stated:

> To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. at 2064. "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105, 131 S.Ct. at 788 (quotation marks and citations omitted); see also Gissendaner v. Seaboldt, 735 F.3d 1311, 1323 (11th Cir. 2013) ("This double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in

> which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.") (quotation marks and alteration omitted). "If this standard is difficult to meet, that is because it was meant to be." Harrington, 562 U.S. at 102, 131 S.Ct. at 786.

Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1331 (11th Cir. 2016), cert. denied, 137 S.Ct. 505 (2016).

When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id.[11] at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)); see also Burger v. Kemp, 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

Overstreet, 811 F.3d at 1287; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) (stating "any deficiencies of counsel in failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

---

[11] Strickland, 466 U.S. at 689.

To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004) (citations omitted); see Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) ("In order to establish prejudice, we must first review the merits of the omitted claim. Counsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'") (citations omitted).

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Williams asserts that his appellate counsel was ineffective because he failed to argue on direct appeal that the trial court erred when it denied his pretrial motions[12] challenging the Information and asserting that the prosecutor committed fraud when he failed to comply with Florida Rule of Criminal Procedure 3.140(g). See Petition at 5; Memorandum at 4-6; Reply at 24-28. Williams raised the ineffectiveness claim in his state petition for writ of habeas corpus. See Resp. Ex. M at 17-22. The appellate

---

[12] The trial court denied Williams' pro se pretrial motions: "6th Amendment Right to the Confrontation Clause Violation and 5th and 14th Amendment Right of Due Process Violation, filed January 3, 2012, and Fraud on the Court - Motion to Dismiss Charges, filed May 7, 2012. See P. Ex. A; Resp. Ex. A at 29-31, 93-104.

court ultimately denied the petition on the merits. See Williams, 135 So.3d 1133; Resp. Ex. N.

Thus, as there is a qualifying state court decision, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Williams is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Williams' ineffectiveness claim is without merit. Williams has failed to establish that appellate counsel's failure to raise the issue on direct appeal was deficient performance. Under Florida law, the state circuit courts have jurisdiction over all felonies. See Fla. Stat. § 26.012(2)(d). Moreover, the Information filed in Williams' case, see Resp. Ex. A at 1-3, properly set forth the elements of burglary of a dwelling (count one), dealing in stolen property (count two), and false verification of ownership on a pawnbroker transaction form (count three), and therefore met the minimum requirement for invoking the jurisdiction of the state circuit court. Additionally, the

Information contains the required sworn oath of the Assistant State Attorney, certifying that the allegations in the Information "are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged," that the prosecution "is instituted in good faith," and "that testimony under oath has been received from the material witness(es) for the offense." Id. at 1. Such a sworn oath by the prosecutor that he received testimony under oath from the material witness(es) for the offense is sufficient pursuant to applicable Florida law. See Fla. R. Crim. P. 3.140(g).[13] Undoubtedly, the trial court had subject matter jurisdiction over Williams' case since the Information charged him with burglary of a dwelling, dealing in stolen property, and false verification of ownership on a pawnbroker transaction form in violation of Florida Statutes sections 810.02(3)(b), 812.019(1), and 539.001(8)(b)8a. See Resp. Ex. A at 1. Williams was neither inadequately informed of the charges nor hampered in preparing a defense.

Given the record, Williams has not shown a reasonable probability exists that the claim would have been meritorious on direct appeal, if counsel had raised the claim in the manner

---

[13] Florida Rule of Criminal Procedure 3.140(g) "requires that informations be under oath of the prosecuting attorney of the court in which the information is filed."

suggested by Williams.[14] Accordingly, Williams' ground one is without merit since he has neither shown deficient performance nor resulting prejudice.

## B. Ground Two

As ground two, Williams asserts that the trial and appellate courts erred when they denied him "access to the alleged stolen ring." Petition at 7; Memorandum at 7-9; Reply at 3-15. Williams argued this issue on direct appeal, see Resp. Ex. G at 2, 19-29; the State filed an Answer Brief, see Resp. Ex. H at 10-14; and the appellate court affirmed Williams' conviction and sentence per curiam without a written opinion as to this issue, see Williams, 130 So.2d 232. To the extent Williams is raising, in ground two, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. H at 11-14, and therefore, the appellate court may have affirmed Williams' conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim

---

[14] Notably, at a February 7, 2012 pretrial hearing, the trial court addressed Williams' assertions relating to sworn affidavits from material witnesses. See Resp. Ex. A at 58-83; P. Ex. A.

was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Williams is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[15] Williams' claim is without merit. Williams filed pro se pretrial motions relating to the allegedly stolen ring. <u>See</u> Resp. Ex. A at 32-33, 106-08. In the motions, he asserted that the State's use of photographs, instead of the ring itself, hampered his ability to prepare and present his defense to the charge of dealing in stolen property; he argued that the ring belonged to him, not the victim, because his great grandmother had given it to him before she died.[16] Thus, he requested access to the ring for examination and asked the court to prohibit the State from eliciting any testimony about the ring from witnesses at trial. The trial court addressed the issue and denied Williams' request for access to and examination of the

---

[15] <u>See</u> Response at 5-6.

[16] Williams asserts that his great grandmother's name and date of birth were engraved inside the ring. <u>See</u> Memorandum at 7.

ring. <u>See</u> Resp. Exs. A at 78-79, 105; B at 269-71, 293-94; <u>see</u> Tr. at 37-38.

Prior to trial, the following colloquy ensued.

> THE COURT: Mr. Williams, let me remind you of something. You're supposed to be your own attorney, you're supposed to know the rules, and things that I've already ruled upon you do not get to just bring up an infinite number of times. As a matter of fact, once the Court has ruled[,] you can't even bring it up again. You don't get to re-argue your issues that you've lost in the past.
>
> Now, if you've got something new[,] tell me all about it, but if all you're going to do is bring up the issue of whether --- the State has already said they don't have the ring, right?
>
> [PROSECUTOR]: Correct.
>
> THE COURT: Who has the ring?
>
> [PROSECUTOR]: The victim. It was released back to the victim, however, pictures were taken and the State feels that it's substantial enough for the victim to testify that's her ring, as well as the pawnshop broker to say that's the ring released to justify it. He's allowed to cross-examine them on that, and if [the] jury does not believe that's enough, then, of course, their verdict will be not guilty.
>
> THE COURT: Does she -- I'm just curious, does she even still own the ring?
>
> [PROSECUTOR]: I'm not aware of --
>
> THE COURT: Is she, for example, going to wear the ring to --
>
> [PROSECUTOR]: I do not believe she's going be bringing it into court. But it's often -- perhaps a scenario could be that the

pawnshop had sold the ring, we could still move forward on dealing in stolen property even if the pawnshop had, in fact, already sold an item. So the actual ring being presented in court is not required.

MR. WILLIAMS: It's required for my defense, Your Honor, because I got to prove my innocence with it. I got to prove my innocence with the ring before they give it to somebody it didn't even belong to.

THE COURT: Have you got a picture of the ring here that I can look at that you're going to be putting in evidence?

By the way, let's talk about the evidence. Usually the State has a list of their exhibits. Do you have something like that?

[PROSECUTOR]: I can tell you, Judge, it's going to be three pictures and the pawn form.

THE COURT: These three pictures[17] and the pawn ticket?

[PROSECUTOR]: Yes, sir.

. . . .

THE COURT: I am looking at three photographs now, I'm glad -- I'm glad I got a chance to look at these now. It's a good thing we're bringing this up before the trial starts. I have no idea what that triangular figure is, but at any -- I think that's just something to get the ring to stand up or something.

. . . .

THE COURT: There's a ring, it's a nice looking ring, it's very unique, extremely unique in my humble opinion, not being an

---

[17] See Resp. Ex. A at 148-50.

expert in jewelry. But there are five separate
oval-shaped white stones. I don't know if
they're opals or what, and then there are five
smaller blue stones that look like sapphires.
And then there's another design, as far as the
setting, it's very intricate. So the ring is
extremely unique and identifiable. I'm not
saying there aren't others exactly like it,
but it's not a normal looking ring. It's
definitely different.

The defendant does have the right to
cross-examine and ask [the victim] all about
why the ring is not important, I guess. But,
at any rate, that's just a -- it's just a
matter that goes to the weight of the
evidence, not to the admissibility.

Tr. at 218-22. During Williams' open statement to the jury, he
argued that, if he had physical possession of the ring, rather than
just a photograph, he could prove his great grandmother had given
him the ring because of the engravings of her name and date of
birth. See id. at 253-54.

At trial, Lou Ann Erickson, the victim, testified that she was
away from her home about an hour on the day it was burglarized. See
id. at 256. She stated that, when she returned to her home, she
discovered that "three pieces" of "good valuable jewelry" were
missing from her bedroom dresser. Id. at 259. According to
Erickson, one of the missing rings was a gift she had given to her
daughter for her twenty-first birthday, see id. at 260; the "small
little opals" were "very fragile" and broke several times, so she
"would take [the ring] back and have it fixed and then give it back
to [her daughter];" upon her daughter's death in 2007, she got the

ring back and often wore it; after the theft of her ring, she
periodically stopped at pawn shops to look for her jewelry, but
never found anything, see id. at 260-61; approximately one year
later, she asked a store clerk at Gold Star Pawn shop if the store
had any opal rings; the clerk pointed to a display case with thirty
or more opal rings; Erickson immediately saw her ring, "started to
cry," and called the officer she had dealt with to report her
discovery, see id. at 261.

Erickson identified three photographs of the ring and
testified that she was "certain" that the photographs accurately
depicted the ring that belonged to her daughter. Id. at 262, 264.
She explained that she "was very familiar with [her] daughter's
ring since [she and her ex-husband] had bought it for her and had
replaced one of the opals numerous times." Id. at 262. The court
overruled Williams' objection to the introduction of the
photographs. See id. at 263. According to Erickson, the only
marking on the ring's inner band was the carat weight; the ring
"had no other inscription of any kind." Id. at 266. She testified
that one of the officers returned the ring to her. See id.

On cross-examination, Erickson testified about the uniqueness
of her daughter's ring.

> That is absolutely the only opal ring
> that was made like that. Because I looked at
> all the others and besides, the ring, as you
> saw in the pictures, is a very unique setting.
> It has five small opals and five small
> sapphires in it. It is arranged very different

24

than a lot of rings. Most opal rings are just
one stone with maybe something around it. This
was very unusual. This setting was very
unusual. I knew my daughter's ring. That is
why I chose it for her.

. . . .

I just knew it was my ring. And I didn't
say anything to them. I just simply told the
officer. I called the officer and told him it
was my ring that was in there. And I showed it
to him when he arrived at the pawnshop. It was
still in the counter -- in the counter. I
showed him which one it was.

Id. at 272, 273. Additionally, Judy Farhat, manager and records
custodian of Gold Star Pawn shop, testified on recross-examination:
"there [are] plenty of rings that are made alike, but not this
particular ring. This obviously looks like a custom ring." Id. at
297.

When the State rested its case, see id. at 307-08, Williams
moved for a judgment of acquittal and asserted that he could have
proved his innocence if the court had permitted him access to the
ring, see id. at 308-09, 314-15. The court reminded Williams that,
while he alluded to the issue in his opening remarks to the jury,
the opening statements were not evidence. See id. at 312. The court
denied his motion for judgment of acquittal. See id. at 315.
Williams testified that he could have proved his innocence if the
court had allowed him access to the ring to show the jury that the
inside of the ring has specific markings with his great
grandmother's name and birthdate. See id. at 319-20. During closing

argument, Williams argued that the State deprived him of the right to present the ring in court. See id. at 348-49.

Although alleged state law errors generally are not grounds for federal habeas relief, "a habeas court may review a state court's evidentiary rulings in order to determine whether those rulings violated the petitioner's right to due process by depriving him of a fundamentally fair trial." Copper v. Wise, 426 F. App'x 689, 692 (11th Cir. 2011) (citing Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996)). The Eleventh Circuit explained:

> Indeed, in a habeas corpus action brought by a state prisoner, our authority is "severely restricted" in the review of state evidentiary rulings. Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (per curiam); see Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." Lisenba,[18] 314 U.S. at 228, 62 S.Ct. 280; see Estelle, 502 U.S. at 75, 112 S.Ct. 475 (holding that habeas relief was not warranted because neither the introduction of the challenged evidence, nor the jury instruction as to its use, "so infused the trial with unfairness as to deny due process of law"); Bryson v. Alabama, 634 F.2d 862, 864-65 (5th Cir. Unit B Jan. 1981) ("A violation of state evidentiary rules will not in and of itself invoke Section 2254 habeas corpus relief. The violation must be of

---

[18] Lisenba v. California, 314 U.S. 219 (1941).

> such a magnitude as to constitute a denial of
> 'fundamental fairness.'"); cf. Chambers,[19]
> 410 U.S. at 302, 93 S.Ct. 1038 (concluding
> that the exclusion of "critical evidence"
> denied the defendant "a trial in accord with
> traditional and fundamental standards of due
> process").

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1295 (2014)

(footnote omitted), cert. denied, 135 S. Ct. 2323 (2015). On this

record, the trial court did not err when it permitted the State to

introduce the three photographs of the ring. In the context of the

trial as a whole, the trial court's ruling did not so infuse the

trial with unfairness as to deny Williams due process of law.

Williams is not entitled to federal habeas relief on ground two.

### C. Ground Three

As ground three, Williams asserts that his appellate counsel

was ineffective because he failed to raise the following issue on

direct appeal: Williams was entitled to be discharged from the

crime when he was not brought to trial within fifty days of the

filing of the demand for speedy trial under Florida Rules of

Criminal Procedure 3.191(b)(4) and (p). See Petition at 8;

Memorandum at 9-17; Reply at 29-43. Williams raised the

ineffectiveness claim in his state petition for writ of habeas

corpus. See Resp. Ex. M at 4-13. The appellate court ultimately

denied the petition on the merits. See Williams, 135 So.3d 1133;

Resp. Ex. N.

---

[19] Chambers v. Mississippi, 410 U.S. 284 (1973).

There is a qualifying state court decision. Therefore, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Williams is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Williams' ineffectiveness claim is without merit. Williams was arrested on the instant charges on November 28, 2011. <u>See</u> Resp. Ex. A at 7, 13-15, 17; PD-1 at 1. On December 22, 2011, he filed a pro se Demand for Speedy Trial (Demand).[20] <u>See</u> Resp. Ex. A at 27-28. In the Demand, he requested to be brought to trial within sixty days of the receipt and filing of the demand.[21] <u>See</u> <u>id.</u> at 27. He filed a notice of expiration of speedy trial time (first notice) on February 9, 2012,

_____

[20] The demand was dated December 21, 2011. <u>See</u> Resp. Ex. A at 27-28; P. Ex. C.

[21] Florida Rule of Criminal Procedure 3.191(a) provides for a right to speedy trial <u>without</u> demand within 175 days of the arrest if the crime charged is a felony. Rule 3.191(b) provides for a speedy trial <u>upon</u> <u>demand</u> within 60 days.

and asserted that the fifty days[22] "ran out" on February 9th. <u>See</u> <u>id.</u> at 42-43. Williams filed a "new notice of expiration of speedy trial time" (second notice) on April 3, 2012, and asked the court to disregard the first notice and rule on the second notice.[23] <u>Id.</u> at 46-47. In the second notice, Williams explained why he filed the new notice:

> The Defendant cites under the penalty of perjury that his 1st Notice of Expiration of Speedy Trial Time is meritless based on 3.191(p) because it was filed on the expiration date was [sic] 2-9-2012 which it should have been filed on 2-10-2012 the 51st day instead of the 50th after the expiration of time needed on the demand for speedy trial.... Therefore the Defendant submits this new notice of expiration of speedy trial time because the first one could be in error.

<u>Id.</u> at 47.

Florida Rule of Criminal Procedure 3.191(g) provides in pertinent part:

> No demand for speedy trial shall be filed or served unless the accused has a bona fide desire to obtain a trial sooner than otherwise might be provided. A demand for speedy trial shall be considered a pleading that the accused is available for trial, has diligently investigated the case, and is prepared or will be prepared for trial within 5 days. . . .

---

[22] Florida Rule of Criminal Procedure 3.191(b)(4) provides: "If the defendant has not been brought to trial within 50 days of the filing of the demand, the defendant shall have the right to the appropriate remedy as set forth in subdivision (p)."

[23] The second notice was dated April 2, 2012. <u>See</u> Resp. Ex. A at 47; P. Ex. C.

In January and February 2012, Williams filed several pretrial motions in preparation for trial. He was neither prepared for trial within five days of his December 22, 2011 demand nor within five days of his first and second notices of expiration. At a February 7, 2012 hearing on pretrial motions, see id. at 58-83, Williams was still trying to obtain discoverable evidence. Notably, the court addressed the speedy trial issue at the hearing, and the following colloquy ensued.

> [THE PROSECUTOR]: Your Honor, I would just like to address the issue of speedy trial. It runs in this case, my calculations based on [the] arrest date is May 21, 2012. I have a trial date that works for the State.
>
> I'm not sure if it works for the defense of April 30, 2012. I'm not sure if that is CR-I week or not. We can, of course, do it the week before.
>
> THE COURT: That would be the week of the 23rd.
>
> [THE PROSECUTOR]: That is correct, and that is fine with the State, your Honor, and a pre-trial the week before. That gets us --
>
> THE COURT: Well actually April 30th we are yielding our courtroom to Judge Arnold. So do you want to set it for April 23rd?
>
> [THE PROSECUTOR]: Yes, sir. For trial and it would [be] the 19th of April for final pre-trial. The State will be prepared those week[s]; but also, we won't have any issue with the month of May with the courthouse moving.
>
> THE COURT: What is the speedy trial date?

[THE PROSECUTOR]: May 21, 2012.[24]

THE COURT: The final pre-trial would be what?

[THE PROSECUTOR]: April 19th.

THE CLERK: April 19th.

THE COURT: Is that right?

THE CLERK: That's correct.

THE COURT: Okay. Did you want to be heard about the trial date?

THE DEFENDANT: I am alright. I want to know if I can get a copy of the order or --

THE COURT: I can't understand what you just said.

THE DEFENDANT: Can I have a copy of the order for the law library?

THE COURT: We will give you that. Anything else?

[PROSECUTOR]: Nothing further from the State, your Honor.

THE COURT: All right. Thank you. You can take the defendant back.

Id. at 80-82.

On April 19, 2012, the court held a hearing and addressed the speedy trial issue and the effect of Williams' second notice of expiration. See Resp. Ex. B at 295-318. Five days later, the trial judge continued the hearing, at which he stated:

---

[24] See Fla. R. Crim. P. 3.191(a) (providing for a right to speedy trial without demand within 175 days of the arrest if the crime charged is a felony).

The issue today is whether the Court dismisses
your case because the rule has not been
complied with, and, therefore -- I already
told you what the issues were. They're not
whether the clerk notified the Court or not.
That's not the issue. The issue -- we all
agreed that the Court was not notified. But
the issue is, number one, did you serve the
State with their copy. Because regardless of
what you did with the clerk, you've got a duty
to serve both the State and the clerk. So
that's the issue. Did you serve them on the
3rd or on the 19th.

And the second issue is, was there a
waiver, and we're going to get the transcript
for that.

    . . . .

And at this time the Court rules that
factually the most credible evidence is that
the defendant mailed a document to the State
or sent it out from the jail. It was received
on the 4th of April of this month and it
contained, unfortunately for the defendant,
not his new notice or any notice of expiration
of speedy trial, but, in fact, he mistakenly
copied his old demand for speedy trial, which
the State had already received way back in
December. Therefore, the State was not put on
notice of expiration of any speedy trial
period until the State received, as they have
told the Court, the first -- for the first
time, a copy of the defendant's new notice for
expiration of speedy trial, and the date that
they first received that, the Court is finding
most credible evidence and testimony, or at
least evidence, as an officer of the court
proffered to the Court, is that the State
first received that notice on the -- and help
me with this, State. You told me it was the
19th, I think; is that correct?

    [PROSECUTOR]: Yes, sir.

    THE COURT: So the Court is finding that
the -- it was received first from -- by the

State on the 19th of April 2012; therefore,
the Court did start the calendar call within
the five days, today's a continuation of that.
Today's date, in fact, is the 24th of April,
so we're still within that five days. And at
this time I'm going to set the case for a
further hearing on Thursday of this week,
which is the 26th.

And, I want to -- in an abundance of
caution, even though I've already ruled that
the State didn't get notice and the time
didn't begin to tick until the 19th of this
month, that -- under that ruling we still
would have to try this case next week, if we
go to trial. So I want to continue to look at
the waiver question.

. . . .

But, anyway, I want to put everybody on
notice so that on Thursday we can dig deeper
into this issue because I've already ruled
that the speedy trial period didn't begin to
tick, this five -- five plus ten day period
didn't begin to tick until the 19th. But if
the defendant did, in fact, waive speedy trial
back on the 7th of February, then we don't
have to try this case next week.

Id. at 350, 354-57. After ordering and reviewing the transcript of

the February 7th hearing, the court held another hearing on April

26th. At the hearing, the court summarized its prior findings and

proceeded to address the speedy trial waiver issue.

[T]his is a continuation of a hearing that
we've had on several previous dates. And what
I did last time is we narrowed the issues,
speedy trial issues and we narrowed them down.
I've already ruled in part and I ruled that
[the prosecutor] did not receive your amended
notice or final notice or new notice [of]
expiration of speedy trial until the 19th of
this month was it, counsel?

33

[PROSECUTOR]: Yes, sir.

THE COURT: So we're still within that period, but I reserved on the issue of whether there was a waiver of speedy trial back on -- [February 7th].

. . . .

THE COURT: Well, Mr. Williams, I've complimented you before and said you were doing a good job, and in many ways you were doing a good job, but when you told me you never agreed to setting of the court date beyond this period that would have been triggered by your demand for speedy trial, I took your word for it but I did trust and verify as they say and I ordered the transcript. Frankly I was surprised to find that you clearly agreed to the continuance when you said I'm all right. You agreed to the setting of the Court [date] of the jury trial beyond the date required by your demand, clearly. And you told me you didn't and I consider that to be misrepresentation.

. . . .

We're going to pass this case at this time for trial and the date I do find that Mr. Williams still has his original speedy trial period and so we're going to set it within that six months on the date that the State asked about which was May 7th ....

Id. at 363-64, 370, 377-78. Given the record, including the trial judge's findings on the issue and his remarks relating to an appeal on the issue, see id. at 372, Williams has failed to establish that appellate counsel's failure to raise the issue on direct appeal was deficient performance.

Given the record, Williams has not shown a reasonable probability exists that the claim would have been meritorious on

direct appeal, if counsel had raised the claim in the manner
suggested by Williams. Accordingly, Williams' ground three is
without merit since he has neither shown deficient performance nor
resulting prejudice.

## D. Ground Four

As ground four, Williams asserts that his appellate counsel
was ineffective because he failed to argue on direct appeal that
the trial court erred when it denied his motion to set aside the
judgment based on violation of his right to a speedy trial within
six months.[25] See Petition at 10; Memorandum at 17-18; Reply at 44-
49. Williams raised the ineffectiveness claim in his state petition
for writ of habeas corpus. See Resp. Ex. M at 13-17. The appellate
court ultimately denied the petition on the merits. See Williams,
135 So.3d 1133; Resp. Ex. N.

As there is a qualifying state court decision, the Court will
address this claim in accordance with the deferential standard for
federal court review of state court adjudications. After a review
of the record and the applicable law, the Court concludes that the
state court's adjudication of this claim was not contrary to
clearly established federal law, did not involve an unreasonable
application of clearly established federal law, and was not based
on an unreasonable determination of the facts in light of the

---

[25] Williams' reference to six months corresponds to the 175-day
deadline in Florida Rule of Criminal Procedure 3.191(a).

evidence presented in the state court proceedings. Thus, Williams is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Williams' ineffectiveness claim is without merit. Williams has failed to establish that appellate counsel's failure to raise the issue on direct appeal was deficient performance. He asserts that "the State should have brought [him] to face the criminal charges within 6 months as proscribed [sic] by the 6th Amendment and [rule] 3.191." Petition at 10. Florida Rule of Criminal Procedure 3.191(a), titled "Speedy Trial without Demand," provides in pertinent part:

> Except as otherwise provided by this rule ... every person charged with a crime shall be brought to trial within 90 days of arrest if the crime charged is a misdemeanor, or **within 175 days of arrest if the crime charged is a felony**. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy as set forth in subdivision (p). The time periods established by this subdivision shall commence when the person is taken into custody as defined under subdivision (d).... This subdivision shall cease to apply whenever a person files a valid demand for speedy trial under subdivision (b).

Fla. R. Crim. P. 3.191(a) (emphasis added). The rule defines "custody" as:

> For purposes of this rule, a person is taken into custody (1) **when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged**, or (2) when the person is served with a notice to appear in lieu of physical arrest.

Fla. R. Crim. P. 3.191(d) (emphasis added).

Williams was arrested on the instant charges on November 28, 2011. See Resp. Ex. A at 7, 13-15, 17; PD-1 at 1. A jury was sworn in on May 7, 2012, just 161 days after his arrest. See Tr. at 211-12. There was no violation of his right to speedy trial without demand. The 175-day speedy trial period would have run on May 21, 2017. See Resp. Exs. A at 80-81; B at 296.

Given the record, Williams has not shown a reasonable probability exists that the claim would have been meritorious on direct appeal, if counsel had raised the claim in the manner suggested by Williams. Accordingly, Williams' ground four is without merit since he has neither shown deficient performance nor resulting prejudice.

### E. Ground Five

As ground five, Williams asserts that the trial court failed to conduct a proper Neil[26] and Slappy[27] inquiry into the State's peremptory strike of prospective juror Beverly Randolph, thus denying Williams a fair and impartial jury in violation of the Sixth Amendment. See Petition at 12; Memorandum at 19; Reply at 15-16. Williams argued this issue on direct appeal, see Resp. Ex. G at 2, 30-32; the State filed an Answer Brief, see Resp. Ex. H at 15-17; and the appellate court affirmed Williams' conviction and

---

[26] State v. Neil, 457 So.2d 481 (Fla. 1984).

[27] State v. Slappy, 522 So.2d 18 (Fla. 1988).

sentence per curiam without a written opinion as to this issue, see Williams, 130 So.2d 232. To the extent Williams is raising, in ground five, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. H at 16-17, and therefore, the appellate court may have affirmed Williams' conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Williams is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[28] Williams' claim is without merit. Two juries were selected on May 7, 2012: one for Williams' trial and another for Benjamin Morales'

---

[28] See Response at 9-10.

trial. <u>See</u> Tr. at 44, 50. During the jury selection proceeding for

Morales' trial, the court stated:

> Okay. So now we've got -- and for the record, Mr. Williams is present and is not participating because this is not his jury selection but he is present and aware of everything that's going on, because he's currently having some quiet conversation with his standby counsel. All right. As long as they're whispering and don't distract us.

<u>Id.</u> at 164-65. During the examination of panelists, Ms. Beverly

Randolph, <u>see</u> <u>id.</u> at 78, stated that an officer killed her best

friend, <u>see</u> <u>id.</u> at 156, but that incident would not affect her

ability to be a fair and impartial juror, <u>see</u> <u>id.</u> at 156-57. During

the jury selection proceeding for Williams' trial, <u>see</u> <u>id.</u> at 180,

the State exercised a "backstrike" to remove Ms. Randolph, <u>id.</u> at

204. The following colloquy ensued.

> [PROSECUTOR]: Your Honor, the State would exercise a backstrike and strike number 28, Ms. Randolph.

> THE COURT: Okay. It may be a backstrike. Backstriking is allowed up until the jury is sworn.

> MR. WILLIAMS: And, Your Honor, I ask for a race neutral reason.

> THE COURT: All right. A Neil-Slappy has been invoked. The State is trying to strike Ms. Randolph. That would be your number what, State?

> [PROSECUTOR]: That's my third peremptory.

> THE COURT: Your third. Okay. You have to give a race neutral and non-pretexual reason to have the Court sustain that strike.

[PROSECUTOR]: Judge, the race neutral
reason, Ms. Randolph did state that during an
arrest of, I believe it was her family
members, that an officer shot and killed one
of her family members. This case does involve
law enforcement. The State does not want her
to be sitting there thinking about her
relative that was shot by the police.

THE COURT: Okay. She must have -- she
wasn't included in our original 11 cause
challenges.

[PROSECUTOR]: She did state that she
could set that aside and be fair and
impartial, that's why the State did not --

THE COURT: But she does have a family --
what was the nature of the relationship?

[PROSECUTOR]: I believe she just
testified that it was a family member. I
apologize, I wasn't the individual asking the
questions during that, but that's the State's
race neutral reason.

THE COURT: All right. Have you stricken
every other juror -- frankly, I don't have a
photographic memory to remember every other
one --

[PROSECUTOR]: I don't think any other
juror stated that a police officer had killed
their [sic] family member.

THE COURT: It was a police officer?

[PROSECUTOR]: A police officer killed
their family member.

THE COURT: All right. I don't recall
that, you're right, with any other juror.
That's the second phase in announcing -- not
only does it have to be race neutral, but it
has to be non-pretexual and I've considered
that to mean you have to be very consistent.
So I find that that is a race neutral reason

and I don't see any inconsistencies so that
will be allowed.

<u>Id.</u> at 204-06.

"[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." <u>Batson v. Kentucky</u>, 476 U.S. 79, 89 (1986). Even a single peremptory strike that results from discriminatory intent violates the Equal Protection Clause. <u>See</u> <u>Cochran v. Herring</u>, 43 F.3d 1404, 1412 (11th Cir. 1995). The Eleventh Circuit has stated:

> When a party accuses her opponent of violating <u>Batson</u>'s prohibition, a district court deploys a three-step process to adjudicate the claim:
>
> > First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.
>
> <u>Foster v. Chatman</u>, -- U.S. --, 136 S.Ct. 1737, 1747, 195 L.Ed.2d 1 (2016).

<u>United States v. Hughes</u>, 840 F.3d 1368, 1381 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 1354 (2017); <u>see</u> <u>Batson</u>, 476 U.S. at 96-98;

see also Truehill v. State, 211 So.3d 930, 942-43 (Fla. 2017), petition for cert. filed, No. 16-9448 (U.S. June 2, 2017).

The trial judge conducted an adequate inquiry[29] when Williams challenged the State's use of one of its peremptory challenges to strike Ms. Randolph. The prosecutor provided a race-neutral reason as to why he used one of his peremptory challenges to strike Ms. Randolph. Next, the trial judge determined that Williams had not shown purposeful discrimination. He found that the prosecutor's race-neutral reason was non-pretextual and his strategy was "very consistent."[30] On this record, the trial judge did not err in his factual determination that the prosecutor did not strike Ms. Randolph for discriminatory reasons. Accordingly, Williams is not entitled to federal habeas relief on ground five.

## IX. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Williams seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial

---

[29] Notably, the trial judge stated that Williams had "invoked" a "Neil-Slappy" inquiry. See Tr. at 204.

[30] "Of course, a court may find intent to discriminate when the reason provided for striking a juror applies with equal force to a juror that the same party declined to strike, who is outside the protected group of the stricken juror." United States v. Hughes, 840 F.3d at 1382 (citing Parker v. Allen, 565 F.3d 1258, 1271 (11th Cir. 2009)).

of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Williams "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Williams appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of July, 2017.


MARCIA MORALES HOWARD
United States District Judge

sc 6/30
c:
Adrian Francis Williams
Counsel of Record